[Cite as *Charley v. Ohio Adult Parole Auth.*, 2023-Ohio-4294.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brandon Charley, | : | |
| Plaintiff-Appellant, | : | No. 22AP-678 |
| | | (C.P.C. No. 21CV-3283) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Adult Parole Authority et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on November 28, 2023

**On brief:** *Brandon Charley*, pro se.

**On brief:** *Dave Yost*, Attorney General, *Marcy Vonderwell*, and *B. Alexander Kennedy*, for appellees Ohio Adult Parole Authority and Ohio Department of Rehabilitation and Correction.

**On brief:** *Mansour Gavin LPA*, *Timothy T. Reid*, *Kenneth E. Smith*, and *Kendall A. Grodek*, for appellees Management Training Corporation and Jennifer McDevitt.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Brandon Charley, appeals from a judgment of the Franklin County Court of Common Pleas denying her summary judgment motion and granting the summary judgment motion of defendants-appellees, Ohio Adult Parole Authority ("OAPA"), Ohio Department of Rehabilitation and Correction ("ODRC"), Management Training Corporation ("MTC"), and Jennifer McDevitt (collectively "appellees"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Charley, a transgender woman, is incarcerated at North Central Correctional Complex for murder, aggravated robbery, and robbery. In July 2019, she first became eligible for parole consideration, and on July 10, 2019, the Ohio Parole Board ("parole board") held a parole release consideration hearing to determine her parole suitability. Based on its review of the relevant factors and information before it, the parole board found Charley not suitable for release at the time of the hearing. The parole board's decision and minutes outline its rationale and bases for this decision. Charley requested the parole board's reconsideration, which was denied in October 2019.

{¶ 3} In May 2021, Charley initiated this action seeking a declaration that appellees violated her due process and equal protection rights, when she was found not suitable for release, because appellees did not comply with the requirement that her Institutional Summary Report ("ISR") be provided to the parole board at least seven days prior to the parole release consideration hearing. In particular, Charley claimed appellees denied her meaningful consideration for parole release, conspired to deny her that meaningful consideration, violated her due process rights, and violated her equal protection rights.

{¶ 4} In April 2022, appellees moved for summary judgment, and in July 2022, Charley moved for summary judgment. Three months later, the trial court granted appellees' summary judgment motion and denied Charley's summary judgment motion.

{¶ 5} Charley timely appeals.

## II. Assignments of Error

{¶ 6} Charley asserts the following five assignments of error for our review:

[I.] The Trial Court abused its discretion by applying the wrong standard of review.

[II.] The Trial Court committed a reversible error by granting Defendants Motion for Summary Judgment, as there are genuine issues of material fact to essential elements that remains to be litigated.

[III.] The trial court abused its discretion by relying on erroneous findings of fact.

[IV.] The trial court committed a reversible error by engaging in a flawed analysis.

[V.] The Trial Court committed a reversible error by denying and/or rendering Plaintiff's Motion for Summary Judgment Moot where there has been no evidence provided that genuine issues of material fact concerning essential elements remain to be litigated.

## III. Discussion

{¶ 7} Because they involve interrelated issues, we address all five of Charley's assignments of error together. Her first assignment of error alleges the trial court erred in applying the wrong standard of review. Her second assignment of error alleges the trial court erred in granting appellees' motion for summary judgment. Her third assignment of error contends the trial court's findings of fact were erroneous. Her fourth assignment of error contends the trial court engaged in a flawed analysis. Finally, in her fifth assignment of error, Charley argues the trial court erred in not granting her motion for summary judgment. Although only assignments of error two and five directly refer to the trial court's disposition of the summary judgment motions, we construe the other assignments of error as also generally challenging the trial court's disposition of those motions. These assignments of error are not well-taken.

{¶ 8} At issue in this appeal is whether the trial court erred in granting appellees' summary judgment motion and denying Charley's summary judgment motion. This court reviews summary judgment under a de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 10th Dist. No. 20AP-563, 2021-Ohio-3898, ¶ 9. Thus, because this court reviews the summary judgment motions anew, without any deference to the trial court, insofar as Charley assigns error relating to the summary judgment standard the trial court applied, and the trial court's analysis and findings, those issues are inconsequential to this court's disposition of this appeal.

{¶ 9} Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). The court reviewing

the motion only may consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action."  Civ.R. 56(C).

{¶ 10}  Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the non-moving party has evidence to support the non-moving party's claims.  *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).  Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.  *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 11}  The core premise of Charley's action against appellees is that she did not receive meaningful consideration for parole.  Ordinarily, an inmate challenging a parole denial, on the basis of no meaningful consideration, initiates a mandamus action because a writ must issue for there to be complete relief—i.e., an order directing the parole board to hold a new hearing.  *See, e.g.*, *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270 ("*Keith I*") (inmate requested a writ ordering the parole board to correct information in his records and to order a new parole hearing to consider the corrected information).  Such an order is a mandatory injunction.  "A mandatory injunction * * * is an extraordinary remedy that compels the defendant to restore a party's rights through an affirmative action," whereas, a "prohibitory injunction preserves the status quo by enjoining a defendant from performing the challenged acts in the future."  (Citations omitted.)  *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, ¶ 12.  Thus, a "prohibitory injunction is used to prevent a future injury, but a mandatory injunction is used to remedy past injuries."  *Id.*  A mandatory injunction is not an available remedy in a declaratory judgment action filed under R.C. Chapter 2721.  *See State ex rel. Kerns v. Simmers*, 153 Ohio St.3d 103, 2018-Ohio-256, ¶ 11, quoting *State ex rel. Arnett v. Winemiller*, 80 Ohio St.3d 255, 259 (1997) (explaining that a declaratory judgment action will "not provide [a] complete remedy when 'ancillary

extraordinary relief in the nature of a mandatory injunction' was also needed"). *But see Hattie v. Anderson*, 68 Ohio St.3d 232, 235 (1994) ("declaratory judgment is the proper remedy to determine the constitutionality or constitutional application of parole guidelines").

{¶ 12} Here, Charley initiated this declaratory judgment action only seeking a declaration that she did not receive meaningful consideration for parole. She expressly acknowledges in her appellate brief that she "has not requested any injunctive relief." (Appellant's Brief at 17.) Thus, she does not request a mandatory injunction. For the reasons that follow, we find the trial court did not err in concluding that Charley failed to submit evidence reasonably demonstrating that she was denied meaningful consideration for parole. Therefore, the matter of remedy is ultimately moot.

{¶ 13} Charley has no inherent or constitutional right to release on parole before the expiration of her sentence. *Swihart v. Ohio Adult Parole Auth.*, 10th Dist. No. 13AP-993, 2014-Ohio-3305, ¶ 17. However, R.C. 2967.03 vests discretion in the parole board to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society." In determining whether to parole an inmate, the parole board must consider "relevant written information concerning the inmate as may be reasonably available." *Keith I* at ¶ 23; Ohio Adm.Code 5120:1-1-07(B). Information to be considered includes, inter alia, the inmate's "risk to reoffend, * * * criminal history and community supervision history, * * * ability to control [his or her] behavior, * * * institutional programming, * * * [and] institutional behavior." Ohio Adm.Code 5120:1-1-07(B).

{¶ 14} "[H]aving established a parole system, and having put in place statutory and regulatory language requiring the OAPA to consider relevant information regarding a prisoner it is considering for parole, the state has created a minimal due-process expectation that the information will actually and accurately pertain to the prisoner whose parole is being considered." *Keith I* at ¶ 32. "[I]n any parole determination involving indeterminate sentencing, the OAPA may not rely on information that it knows or has reason to know is inaccurate." *Id.* at ¶ 26. Thus, under *Keith I*, "where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the OAPA has an obligation to investigate and correct any significant errors in the record of the prisoner." *Id.* at ¶ 28.

{¶ 15} This means an offender who is eligible for parole must receive "meaningful consideration for parole" at his or her parole hearing. *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 2002-Ohio-6719, ¶ 27. The existence of "materially false or misleading information in an inmate's parole record" undermines this requirement. *State ex rel. Keith v. Dept. of Rehab. & Corr.*, 153 Ohio St.3d 568, 2018-Ohio-3128, ¶ 16 ("*Keith II*"). Thus, a "substantive error[]" precludes meaningful consideration of an inmate's release. *State ex rel. Brust v. Chambers-Smith*, 156 Ohio St.3d 331, 2019-Ohio-857, ¶ 9. In this context, a " 'substantive error' is synonymous with 'substantial error.' " *State ex rel. Edwards v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-195, 2020-Ohio-2799, ¶ 15, quoting *State ex rel. Cobb v. Adult Parole Auth.*, 155 Ohio St.3d 527, 2018-Ohio-4745, ¶ 8; *Keith II* at ¶ 16. Consequently, "the operative inquiry is 'whether there is a reasonable possibility that but for the alleged error, the parole board would have reached a different decision.' " *Id.*, quoting *Cobb* at ¶ 9.

{¶ 16} Charley argues she was denied equal protection and did not receive meaningful consideration for parole because her ISR was not timely provided to the parole board in accordance with ODRC policy. The ISR, which was prepared at the parole board's request, includes listings of Charley's programming efforts and rule infractions during her incarceration. In support of her argument, Charley asserts that, unlike her parole hearing on July 10, 2019, parole hearings of other inmates were continued when their ISRs were not timely completed. Charley also cites ODRC policy No. 105-PBD-03, which provides that a completed ISR must be submitted to the parole board at least seven days prior to an inmate's parole hearing. Charley asserts this policy was violated, and therefore she was denied equal protection and her parole request did not receive meaningful consideration. We disagree.

{¶ 17} Charley is correct that the evidence demonstrated the completed ISR was not provided to the parole board at least seven days before her parole hearing on July 10, 2019. Case managers are responsible for ensuring an inmate's infractions and programming information is included in the ISR that is provided to the parole board. In a submitted affidavit, ODRC case manager Jennifer McDevitt, who was assigned to Charley's case, explained that information is either manually or automatically integrated into an ISR. During the morning of Charley's parole consideration hearing, it was discovered that, due to a system malfunction, her institutional conduct information was not properly included in her ISR. The

ISR was updated, and the nine-page document was provided to the parole board prior to Charley's hearing that day. Because the updated ISR was provided to the parole board before the hearing, non-compliance with this policy did not affect Charley's rights to due process and equal protection. The seven-day requirement Charley relies on simply functions to promote administrative convenience. Thus, while the policy was not adhered, this does not reasonably demonstrate the absence of meaningful consideration or an equal protection violation.

{¶ 18} Charley also contends she did not receive meaningful consideration for parole because the parole board did not have in its possession all the information necessary for a proper review. Namely, she asserts the ISR submitted to the parole board did not include approximately 45 of her programming efforts. As set forth above, the meaningful consideration inquiry standard is not whether any pertinent information, regardless of its possible significance, was improperly omitted from consideration, but whether the "parole board relied on substantively inaccurate information at the parole hearing." *Phelps v. Ohio Parole Bd.*, 10th Dist. No. 22AP-175, 2023-Ohio-284, ¶ 23. This is not to say that omission of pertinent information cannot result in the denial of meaningful consideration, but that omission must have arguably impacted the parole decision. Charley did not make this showing.

{¶ 19} As part of the parole board's rationale for denying release, it stated: "Since [Charley's] admission, [she] has participated in risk-relevant programming, yet [her] accumulation of rule infractions far exceed[s] [her] programming efforts." (July 10, 2019 Parole Board Decision & Minutes at 1.) Regarding the information before the parole board at the hearing, Charley acknowledges that the information before the parole board detailed approximately 30 examples of her programming efforts during her incarceration. These included "victim's awareness," "anger management," "conflict resolution," "GED," and numerous other group activities. (Appellant's Brief at 31.) She contends this omitted dozens of other programming she has participated in during her incarceration, including "financial protection," "resume writing," "commercial driver's license," "entrepreneur class," and that also omitted was information showing she received over two dozen Toastmaster's awards, and that she has taken classes, and earned business certificates, with Marion Technical College. (Appellant's Brief at 33.) Charley asserts her programming efforts actually totaled 74, which

far exceeded her 50 rule infractions, thus undermining the parole board's above-quoted rationale for the denial of her release. We are unpersuaded.

{¶ 20} The parole board's full statement of its rationale for denying release was as follows:

> Inmate Charley was present for [her] first hearing, having served almost 15 years. Since [her] admission, [she] has participated in risk-relevant programming, yet [her] accumulation of rule infractions far exceed [her] programming efforts. The number and type of conduct reports brings into question the extent to which inmate Charley learned and can apply the information from the programs [she] attended. The Inmate has not demonstrated positive offender change for any period of time. Inmate Charley's case is aggravated by the case-specific factors of violence, brutality and community opposition. There is substantial reason to believe that Inmate Charley will engage in further criminal conduct, or that the inmate will not conform to such conditions of release as may be established under AR 5120:1-1-12. The aggravating factors in this case lead the Board to conclude that release would demean the seriousness of the offenses and not further the interest of justice or protect the safety and security of society. After weighing the relevant factors, the Board does not consider the Inmate suitable for release at this time and votes, by Majority, to continue the Inmate for seven (7) years.

(Parole Board Decision & Minutes at 1.)

{¶ 21} The parole board's stated reasoning demonstrates its concern that Charley has repeatedly violated institutional rules during incarceration, despite engaging in programming efforts designed to promote better choices and behavior. We disagree with Charley's characterization of this rationale as simply quantitatively comparing the number of rule infractions with documented programming, and that adding information of additional programming to the equation may alter the parole board's analysis. The parole board noted that both Charley's "number [of violations] and type of conduct" show an inability or unwillingness to apply the skills taught in those programs. (Parole Board Decision & Minutes at 1.) The dozens of institutional violations included hostility toward prison staff and physical altercations with other inmates. In other words, despite Charley's institutional programming participation, it did not curtail her poor choices and behavior. In view of these circumstances, there is no indication that the inclusion of information concerning additional programming efforts, primarily relating to Charley's post-GED educational efforts and Toastmaster's

awards, would have altered the parole board's analysis of this particular issue. Charley thus failed to show a reasonable possibility that the inclusion of any omitted information would have resulted in a different parole hearing outcome.

{¶ 22} The parole board's denial of Charley's request for reconsideration confirms our analysis. After the parole board denied Charley's release, Charley requested reconsideration pursuant to ODRC policy No. 105-PBD-04, and she submitted the information she asserted was not considered at the hearing. In October 2019, a letter was sent to Charley informing her the parole board had received her request for reconsideration. The letter notes its applicable policy provides that any request for reconsideration "must be based on, and specifically refer to, relevant and significant new information that was either not available or not considered at the time of the hearing." (Appellees' Ex. E, Apr. 25, 2022 Mot. for Summ. Jgmt.) The letter also indicates Charley's reconsideration request, and all other relevant information, was reviewed by the parole board, and the board, by majority vote, decided not to reconsider the matter. Thus, the parole board itself found that this information was not significant. This finding belies any contention that omitted information, concerning Charley's programming activities while incarcerated, was sufficiently material to possibly affect the parole board's consideration of Charley's release from incarceration.

{¶ 23} For these reasons, we conclude the trial court did not err in granting appellees' summary judgment motion and denying Charley's summary judgment motion. Accordingly, we overrule all five of Charley's assignments of error.

## IV. Disposition

{¶ 24} Having overruled all five of Charley's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and EDELSTEIN, JJ., concur.

———————————