[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dodson v. Phipps*, Slip Opinion No. 2024-Ohio-4928.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**SLIP OPINION NO. 2024-OHIO-4928**

**THE STATE EX REL. DODSON, APPELLANT, *v.* PHIPPS, JUDGE, ET AL., APPELLEES.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dodson v. Phipps*, Slip Opinion No. 2024-Ohio-4928.]**

*Procedendo—Mandamus—Inmate pursued adequate remedy in ordinary course of law by appealing judge's denial of his motions to journalize jury-verdict forms—Inmate failed to establish that Adult Parole Authority has a clear legal duty not to use Ohio Risk Assessment System tool at a new parole hearing—When construed most strongly in inmate's favor, the evidence does not support his allegation of error in parole board's determination of when he first became statutorily eligible for parole—Court of appeals' judgment granting judge's motion to dismiss and Adult Parole Authority's motion for summary judgment affirmed.*

(No. 2023-1418—Submitted July 23, 2024—Decided October 15, 2024.)

APPEAL from the Court of Appeals for Franklin County,

No. 22AP-304, 2023-Ohio-3639.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ.

**Per Curiam.**

{¶ 1} Appellant, Ricardo Dodson, filed a complaint for writs of procedendo and/or mandamus in the Tenth District Court of Appeals against appellees, Franklin County Court of Common Pleas Judge Karen Held Phipps and the Ohio Adult Parole Authority ("APA").[1] The court of appeals dismissed Dodson's complaint as to Judge Phipps, granted summary judgment in favor of the APA, and denied Dodson's requests for the writs. Dodson has filed a direct appeal and a motion asking us to take judicial notice of certain purported facts. We deny the motion and affirm the Tenth District's judgment.

## I. BACKGROUND

{¶ 2} Dodson is serving an indeterminate prison sentence for his convictions in *State v. Dodson*, Franklin C.P. No. 90CR-11-5678B ("Case One") and *State v. Dodson*, Franklin C.P. No. 90CR-11-5725 ("Case Two"). The sentencing entries state that Dodson was convicted of four counts of rape, one count of attempted rape, and two counts of kidnapping in the second degree. The convictions were affirmed on direct appeal. *State v. Dodson*, Franklin App. No. 91AP-411, 1991 WL 227806 (Oct. 24, 1991); *State v. Dodson*, Franklin App. No. 91AP-498, 1991 WL 227804 (Oct. 31, 1991).

_____

1. Dodson also named Magistrate Bosques Milliken as a respondent. Dodson did not object to a Tenth District magistrate's recommendation to dismiss his complaint as to Magistrate Milliken, *see* Civ.R. 53(D)(3)(b)(iv), nor does he challenge the court of appeals' adoption of this recommendation, *see* 2023-Ohio-3639, ¶ 9-10 (10th Dist.). Accordingly, we do not address these proceedings as they pertained to Magistrate Milliken.

**{¶ 3}** The APA has denied Dodson's multiple requests for parole, and Judge Phipps currently presides over both cases. In September 2021, Dodson filed in Case Two a motion for leave to file a delayed motion for a new trial; Judge Phipps did not rule on this motion before Dodson filed the complaint in this matter. And in April 2022, Dodson filed under both case numbers a motion to record and journalize the jury-verdict forms pertaining to his kidnapping convictions; Judge Phipps denied these motions.

**{¶ 4}** In May 2022, Dodson filed the complaint that led to this appeal. Dodson attached to his complaint copies of several documents, including the sentencing entries from Case One and Case Two; a jury-verdict form indicating that "[h]aving found [Dodson] guilty [of kidnapping]," the jury in Case One did "further find that [Dodson] did release the victim in a safe place unharmed";[2] Judge Phipps's entry denying Dodson's motion to journalize the jury-verdict forms; and decisions and vote sheets of the parole board following hearings held in 2021, 2018, 2015, and 2012.

**{¶ 5}** Dodson requested writs that would compel Judge Phipps to (1) rule on his September 2021 motion for leave to file a delayed motion for a new trial, (2) record and journalize the jury-verdict forms, (3) comply with the notice and service requirements of Civ.R. 58(B), and (4) pay the filing fees associated with the filing of his complaint. Judge Phipps subsequently denied Dodson's motion for leave to file a delayed motion for a new trial and then moved to dismiss Dodson's complaint against her as moot. The Tenth District referred the matter to a magistrate, who recommended that the court grant Judge Phipps's motion to dismiss.

**{¶ 6}** Dodson also alleged in his complaint that the APA had denied him meaningful consideration for parole by relying on inaccurate reports and information in his parole records. Dodson later amended this claim to further allege

2. Dodson may have intended to attach a copy of the jury-verdict form from Case Two, but if so, it is almost entirely illegible.

that the APA had denied him meaningful consideration for parole by (1) improperly utilizing and applying the Ohio Risk Assessment System tool and (2) improperly and retroactively considering "sentencing parity" under Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 ("S.B. 2" or "Senate Bill 2").  He requested a writ that would compel the APA to conduct a "new parole hearing which is meaningful." The APA filed a motion to dismiss or, in the alternative, for judgment on the pleadings.  The magistrate recommended that the Tenth District grant the APA's motion to dismiss only as to Dodson's original claim.  The APA then filed a motion for summary judgment as to the amended claim, and the magistrate recommended that the court of appeals grant the motion.

{¶ 7} Dodson filed objections to the magistrate's decisions, which the Tenth District overruled.  The court of appeals adopted the magistrate's decisions, granted Judge Phipps's motion to dismiss, granted the APA's motion for summary judgment, and denied the requested writs.  2023-Ohio-3639, ¶ 12 (10th Dist.).

{¶ 8} Dodson has appealed to this court as of right.

## II.  ANALYSIS

### A.  Motion for Judicial Notice

{¶ 9} Dodson has filed a "motion for 'judicial notice' of undisputed facts which are significant to the disposition of the case."  The purported facts Dodson asks us to take judicial notice of are his (1) self-serving summaries of Case One and Case Two and (2) an assertion, with supporting argument, that his kidnapping convictions are "void and unlawful."  Dodson attached to his motion a copy of the sentencing entry and jury-verdict form from Case One.  Neither the APA nor Judge Phipps has responded to the motion.

{¶ 10} A court may take judicial notice of "adjudicative facts; i.e., the facts of the case."  Evid.R. 201(A).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). The information included in Dodson's motion fails to meet this evidentiary standard. Moreover, "[a] reviewing court generally may not add matter to the record before it and then decide the appeal on the basis of the new matter." *State ex rel. Harris v. Turner*, 2020-Ohio-2901, ¶ 16, citing *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus. We therefore deny Dodson's motion.

## B. Dodson vs. Judge Phipps

{¶ 11} On appeal, Dodson challenges the Tenth District's dismissal of his second claim, in which he alleged that Judge Phipps has refused to record or journalize the jury-verdict forms related to his kidnapping convictions and requested a writ of procedendo compelling Judge Phipps to do so. Judge Phipps's motion to dismiss did not address this claim. The decision to dismiss Dodson's second claim was therefore rendered sua sponte. *See* 2023-Ohio-3639 at ¶ 57 (10th Dist.) (magistrate's decision); *id*. at ¶ 10.

{¶ 12} A court of appeals may sua sponte dismiss a claim if it "is frivolous or the claimant obviously cannot prevail on the facts alleged in the complaint." *State ex rel. Scott v. Cleveland*, 2006-Ohio-6573, ¶ 14. Dismissal for failure to state a claim upon which relief can be granted is appropriate if, after presuming the truth of all material factual allegations and making all reasonable inferences in the claimant's favor, it appears beyond doubt that the claimant can prove no set of facts entitling him to the requested extraordinary relief. *Id*.; *accord* Civ.R. 12(B)(6). We review de novo the court of appeals' decision to dismiss. *See State ex rel. McKinney v. Schmenk*, 2017-Ohio-9183, ¶ 8.

{¶ 13} For a writ of procedendo to issue, Dodson must establish (1) a clear legal right to require Judge Phipps to proceed, (2) a clear legal duty on the part of Judge Phipps to proceed, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Culgan v. Collier*, 2013-Ohio-1762, ¶ 7. "A writ of

procedendo is proper when a court has refused to enter judgment or has unnecessarily delayed proceeding to judgment." *Id.* However, a writ of procedendo will lie only to instruct a court to issue a judgment, not to instruct a court as to what that judgment should be. *State ex rel. Bechtel v. Cornachio*, 2021-Ohio-1121, ¶ 7.

{¶ 14} Dodson attached to his complaint a copy of Judge Phipps's entry denying his motion to record and journalize the jury-verdict forms, and we may consider the entry. *See State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569, fn. 1 (1996), citing *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 109 (1995). Therefore, because Dodson does not dispute that Judge Phipps denied his motion to record and journalize the jury-verdict forms, his request is moot—he has already received the only relief obtainable under his claim. *See State ex rel. Hibbler v. O'Neill*, 2020-Ohio-1070, ¶ 9 ("Neither procedendo nor mandamus may compel the performance of a duty that has already been performed.").

{¶ 15} However, the essence of Dodson's position rests on a premise that a valid final judgment of conviction was not entered in either case, because the sentencing entries do not dispose of the kidnapping counts as allegedly indicted and do not include the jury's factual finding that he released the victims in a safe place unharmed. According to Dodson, these omissions mean that his sentencing entries do not contain "the fact of conviction," are not final, appealable orders, and therefore "nothing . . . can be appealed." He argues that Judge Phipps has a clear legal duty to record and journalize the jury-verdict forms to properly reflect the fact of his kidnapping convictions. *See* Crim.R. 32(C); *see also State v. Lester*, 2011-Ohio-5204, paragraph one of the syllabus ("A judgment of conviction is a final order subject to appeal under R.C. 2505.02 when it sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk.").

6

**{¶ 16}** Even if we determined that Judge Phipps had a legal duty to journalize the jury-verdict forms, Dodson would not be entitled to an extraordinary writ. This is because Dodson appealed Judge Phipps's denial of his motions to journalize the jury-verdict forms, and an appeal—notwithstanding its success—is an adequate remedy in the ordinary course of the law. *See Jackson v. Johnson*, 2013-Ohio-999, ¶ 5. Additionally, Dodson could have raised the issue in his direct appeals from the judgments of conviction.

**{¶ 17}** Finally, Dodson contends that the Tenth District erred by not specifically addressing his objection to the magistrate's conclusion that he had an adequate remedy in the ordinary course of the law by way of appeal. *See* 2023-Ohio-3639 at ¶ 57 (10th Dist.) (magistrate's decision). Dodson's objection was based on his contention that Judge Phipps has a legal duty to issue a final, appealable order by journalizing the jury-verdict forms. The court of appeals mentioned this objection in its opinion, stated that it agreed with the conclusions set forth in the magistrate's decision, and held that Dodson had not shown either that he has a clear legal right to the relief he demands from Judge Phipps or that Judge Phipps has a clear legal duty to grant any such relief. *Id.* at ¶ 9-10. There is no basis on which we can conclude that the court of appeals did not, as required by Civ.R. 53(D)(4)(d), "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Accordingly, we reject Dodson's request to remand this matter to the court of appeals for further consideration of his objection.

**{¶ 18}** Because Dodson can prove no set of facts entitling him to the extraordinary relief requested in his second claim against Judge Phipps, we conclude that the court of appeals correctly dismissed the claim.

### C. Dodson vs. the APA

**{¶ 19}** Dodson next challenges the Tenth District's grant of summary judgment in favor of the APA on his amended claim. Underlying the arguments

asserted in support of the amended claim is Dodson's request for a writ of mandamus that would compel the APA to conduct a new hearing at which his parole request is given "meaningful" consideration. A prisoner has no constitutional or statutory right to parole before the expiration of a valid sentence. *State ex rel. Bailey v. Ohio Parole Bd.*, 2017-Ohio-9202, ¶ 9, citing *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), and *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490 (1994). That said, there is an "inherent expectation 'that a criminal offender will receive meaningful consideration for parole.' " (Emphasis omitted.) *Bailey* at ¶ 10, quoting *Layne v. Ohio Adult Parole Auth*., 2002-Ohio-6719, ¶ 27, citing former R.C. 2967.13(A).

**{¶ 20}** To be entitled to a writ of mandamus, Dodson must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the APA to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 2012-Ohio-69, ¶ 6.

**{¶ 21}** Summary judgment on Dodson's amended claim in favor of the APA was appropriate only if (1) there is no genuine issue as to any material fact, (2) the APA is entitled to judgment as a matter of law, and (3) construing the evidence most strongly in Dodson's favor, reasonable minds can come to but one conclusion, and that conclusion is adverse to Dodson. *State ex rel. Whittaker v. Lucas Cty. Prosecutor's Office*, 2021-Ohio-1241, ¶ 8; *accord* Civ.R. 56(C). We review de novo a court of appeals' decision to grant summary judgment. *Whittaker* at ¶ 8.

*1. The Ohio Risk Assessment System*

**{¶ 22}** In support of his amended claim, Dodson first alleged that the APA denied him meaningful consideration for parole by improperly utilizing and applying the Ohio Risk Assessment System tool ("ORAS"). Under R.C. 5120.114(A) and Adm.Code 5120-13-01, the Ohio Department of Rehabilitation and Correction ("DRC") has selected ORAS as the "single validated risk

assessment tool" to use when assessing every adult offender's "risk of reoffending" and "rehabilitative needs." Dodson claims that ORAS is inapplicable to sex offenders and to inmates who have been incarcerated for long terms.

{¶ 23} To the extent that Dodson contends the APA abused its discretion in its application of ORAS to his request for parole, this claim will not lie in mandamus. *See State ex rel. Hodges v. Taft*, 64 Ohio St.3d 1, 4 (1992) (a writ "cannot issue to control an officer's exercise of discretion"). To grant Dodson's request for a writ of mandamus, we would have to conclude that the APA has a clear legal duty to conduct a new hearing *without using* ORAS in its determination of whether to grant Dodson parole. To the contrary, however, the APA has a clear legal duty *to use* ORAS when assessing every adult offender's risk of reoffending and rehabilitative needs. *See* R.C. 5120.114(A)(10) (the tool that is selected by DRC "shall be used by" the APA, among other entities); *see also* Adm.Code 5120-13-01(B) (the DRC has selected ORAS as the tool that must be used for adult offenders).

{¶ 24} The APA has discretion at a parole hearing to consider other information in addition to an offender's ORAS score. *See* Adm.Code 5120:1-1-07(B) ("the parole board shall consider any relevant information concerning the inmate as may reasonably be available"); *see also State ex rel. Semenchuk v. Ohio Adult Parole Auth.*, 2019-Ohio-4641, ¶ 21 (10th Dist.) ("while the parole board must consider available ORAS information in its evaluation of whether to parole an inmate, it retains discretion to evaluate that information in relation to all of the other information before it"). And some courts have questioned the extent to which ORAS is applicable to sex offenders because none of the seven categories that ORAS assesses specifically pertain to sex offenses. *See, e.g.*, *State v. Garcia*, 2021-Ohio-4480, ¶ 52 (11th Dist.) ("a defendant's ORAS score is only a factor, one of limited applicability to sexual offenders, for the court to consider in fashioning a sentence"); *State v. Snider*, 2021-Ohio-348, ¶ 27 (4th Dist.) ("ORAS is not a litmus

test for sentencing, let alone specifically intended to assess sexual offenders"); *see also Snider* at ¶ 24, fn. 1 (noting that there are other tests specifically designed to assess a sex offender's risk of reoffending). Nevertheless, the requirement under R.C. 5120.114 and Adm.Code 5120-13-01 that the APA always use ORAS when considering parole for adult offenders includes no exception for sex offenders or inmates who have been incarcerated for long terms. Accordingly, Dodson cannot establish that the APA has a clear legal duty not to use ORAS at a new parole hearing, and he therefore is not entitled to a writ of mandamus on this basis. Accordingly, we uphold the court of appeals' determination that the APA is entitled to judgment as a matter of law as to this part of Dodson's amended claim.

**{¶ 25}** Dodson additionally argues that the court of appeals erred by granting summary judgment in favor of the APA because he is entitled to "discovery" or "disclosure" of the ORAS instrument the APA used to evaluate his suitability for parole. Dodson did not assert this argument in his complaint or amended complaint, instead raising it for the first time in his response to the APA's motion for summary judgment. The court of appeals therefore did not address this argument on summary judgment, and we need not address it on appeal. *See, e.g.*, *State ex rel. Grounds v. Hocking Cty. Bd. of Elections*, 2008-Ohio-566, ¶ 24; *see also Young v. Leslie*, 2009-Ohio-396, ¶ 9 (9th Dist.) (response in opposition to summary-judgment motion not appropriate time to raise causes of action not set forth in complaint).

### 2. *Senate Bill 2*

**{¶ 26}** The remaining part of Dodson's amended claim for a writ to compel a new parole hearing concerns Senate Bill 2, effective July 1, 1996, which amended Ohio's felony-sentencing provisions. *See* Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136. These provisions do not apply to Dodson, as he was convicted and sentenced in 1991. *See State v. Rush*, 83 Ohio St.3d 53 (1998), paragraph two of

the syllabus (S.B. 2 does not apply to defendants who committed crimes prior to act's effective date).

{¶ 27} Prior to October 23, 2020, in considering the release of an inmate, the parole board was required to consider "[t]he equivalent sentence range under [S.B. 2] for the same offense of conviction if applicable." Former Adm.Code 5120:1-1-07(B)(8), 2009-2010 Ohio Monthly Record 10-2690, effective Apr. 15, 2010. That particular provision has since been deleted. *See* former Adm.Code 5120:1-1-07, 2020-2021 Ohio Monthly Record 4-807, effective Oct. 23, 2020. The parole board is now required to "consider any relevant information concerning the inmate as may reasonably be available," including 16 enumerated factors, the last of which is "[a]ny other factors which the board determines to be relevant." Adm.Code 5120:1-1-07(B).

{¶ 28} According to Dodson, he was most recently denied parole following a hearing on May 17, 2021. One reason for the parole board's decision on that date was its consideration of "SB 2 parity and the fact that [Dodson] was given consecutive sentences by the court." Dodson argues that he has a clear legal right to a new parole hearing because the APA denied him meaningful consideration for parole by retroactively applying laws related to S.B. 2. Dodson alleges that he should have been eligible for parole after serving approximately ten years of his sentence but that if the provisions of S.B. 2 are applied retroactively, he will not be eligible for parole until he serves approximately 56 years of his sentence (representing the aggregate minimum of his 130-year indeterminate sentence). Stated differently, Dodson believes that a genuine issue of material fact exists as to whether the parole board improperly decided that he is not yet statutorily eligible for parole. Lastly, Dodson contends that the APA's actions violated the Ex Post Facto Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution.

**{¶ 29}** When an alleged error, supported by evidence, may have affected the outcome of a parole hearing, a writ of mandamus may issue to compel a new parole hearing. *See State ex rel. Keith v. Ohio Adult Parole Auth.*, 2014-Ohio-4270, ¶ 28, 30. Here, construing the evidence most strongly in Dodson's favor, the evidence does not support Dodson's allegation of error in the parole board's determination of when he first became statutorily eligible for parole. The parole board's May 2021 decision states that Dodson's "first statutory eligibility date" was October 2000, which was near the beginning of his tenth year of incarceration. And in his complaint, Dodson alleges that he has appeared before the parole board on eight occasions, beginning in 2000. This suggests that the parole board did in fact believe that Dodson was statutorily eligible for parole at or near the time he claims he was.

**{¶ 30}** Further, the parole board ultimately determined that granting Dodson parole in May 2021 "would create undue risk to public safety and/or would not further the interest of justice nor be consistent with the welfare and security of society," Adm.Code 5120:1-1-07(A)(2). In rendering its decision, the parole board stated that it had considered all mandatory factors under Adm.Code 5120:1-1-07. In addition to S.B. 2 parity, the board's rationale for denying Dodson's request for parole is as follows: "Dodson has completed some good programming[;] however, he lacks a risk management plan specific to his sexual re-offending and to his current risk level. Additionally, the Board is concerned about his escalating history of violence specific to that of women."

**{¶ 31}** Dodson directs us to no case law prohibiting the board from considering S.B. 2 parity as one relevant factor among many. In fact, in a previous case before the Tenth District, another defendant who had been sentenced before S.B. 2 became effective asserted a constitutional challenge to the application of post-S.B. 2 parole guidelines to him. *State v. Caslin*, 1998 WL 680834, *1 (10th Dist. Sept. 29, 1998). The court of appeals rejected the challenge because the

application of post-S.B. 2 parole guidelines neither changed the sentence imposed for the crime of which the defendant had been convicted nor deprived him of any defense available according to the law in effect at the time that he committed the crime. *Id*. at *2. Retrospective application of the amended parole guidelines merely changed the APA's consideration of the defendant's parole eligibility. *Id*. For this reason, Dodson's contention that the APA has violated the Ex Post Facto Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution is also without merit. *See State v. Walls*, 2002-Ohio-5059, ¶ 21-23 (the Ex Post Facto Clause implicates only certain other types of legislative acts).

{¶ 32} Dodson cannot establish that he has a clear legal right to a new parole hearing. We therefore uphold the court of appeals' determination that the APA is entitled to judgment as a matter of law on his amended claim.

### III. CONCLUSION

{¶ 33} For the reasons stated above, we deny Dodson's judicial-notice motion and affirm the Tenth District Court of Appeals' judgment.

Judgment affirmed.

————————————

Ricardo Dodson, pro se.

G. Gary Tyack, Franklin County Prosecuting Attorney, and Brandon Coy Hendrix, Assistant Prosecuting Attorney, for appellee Judge Karen Held Phipps.

Dave Yost, Attorney General, and John H. Bates, Assistant Attorney General, for appellee Ohio Adult Parole Authority.

————————————