[Cite as *Beckman v. Ohio Parole Bd.*, 2024-Ohio-5784.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Andrew J. Beckman, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 23AP-673<br>(C.P.C. No. 21CV-7757) |
| Ohio Parole Board et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 10, 2024

**On brief:** *Kravitz, Brown & Dortch, L.L.C., Richard R. Parsons*, and *Paula Brown*, for appellant. **Argued:** *Richard R. Parsons*.

**On brief:** *Dave Yost*, Attorney General, and *D. Chadd McKitrick*, and *Andrew T. Gatti*, for appellees Ohio Parole Board and Ohio Department of Rehabilitation and Correction. **Argued:** *D. Chadd McKitrick*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Andrew J. Beckman, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for partial summary judgment and granting the summary judgment motion of defendants-appellees Ohio Parole Board ("OPB") and Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On November 23, 1999, appellant was convicted of aggravated murder for the stabbing death of B.S. He was sentenced to life imprisonment with parole eligibility after 20 years and is currently incarcerated at Marion Correctional Institution ("MCI").

Appellant first became eligible for parole consideration in spring 2019.  During a meeting with an OPB member in May 2019, appellant's father averred that he and his wife would support appellant upon his release from prison; an OPB member suggested that appellant participate in the Personal Responsibility of Violence Elimination ("PROVE") program and asserted that it was offered at MCI.  On June 25, 2019, OPB held a parole release consideration hearing to determine appellant's parole suitability.  Following that hearing, OPB found appellant not suitable for release and continued his parole hearing for 120 months (10 years).

{¶ 3}  On July 5, 2019, OPB issued a "Decision and Minutes" outlining its rationale and bases for its decision to deny parole.  OPB stated it had considered the mandatory factors set forth in Ohio Adm.Code 5120:1-1-07 and that such factors supported continuing appellant's incarceration.  OPB set forth its rationale for finding appellant not suitable for release as follows:

> The inmate's case is aggravated by the extreme violence exhibited in the stabbing death to the mother of his child. The inmate has taken some relevant programming but exhibits limited insight into offense behavior. He has institutional tickets, but severity of tickets has improved in recent years. The aggravating factors in this case lead the Board to conclude that release would demean the seriousness of the offense and not further the interest of justice. After considering relevant factors, the Board does not consider the inmate suitable for release at this time.

(Compl. at ¶ 38, Ex. 3.)

{¶ 4}  In October 2019, appellant submitted a written request for reconsideration. Therein, appellant asserted that OPB failed to review his mental health records in contravention of Ohio Adm.Code 5120:1-1-07(B)(5).  Appellant also challenged OPB's assertion that he had taken some relevant programming but exhibited limited insight into the offense behavior; appellant claimed that OPB did not inform him what it considered to be "relevant programming."  (Compl. at ¶ 45, Ex. 5.)  Appellant further claimed that OPB's suggestion to his father that he participate in the PROVE program was the first time he had been informed of that program.  Appellant further asserted that due to his Ohio Risk Assessment System ("ORAS") designation as low risk/low need, he was precluded from receiving an individualized case plan targeting his identified risk factors; therefore, he was

unable to address the programming factors that led OPB to continue his parole hearing. In December 2019, OPB denied appellant's request for reconsideration via form letter. Following this denial, appellant inquired of MCI staff as to the availability of the PROVE program at MCI; he was urged to file a second request for reconsideration.

{¶ 5} In December 2020, appellant filed a second written request for reconsideration. Therein, he asserted that during his parole hearing, one of the OPB members specifically asked why he had not participated in the PROVE program since it was offered at MCI. Appellant explained that the program had never been offered at MCI. The OPB member responded that the PROVE program was listed on MCI's institutional website and again asked appellant why he had not participated. Appellant stated that no ODRC staff member had ever suggested that he participate in the PROVE program and that if OPB wanted him to participate, OPB would need to formally recommend that he participate so that he could be transferred to an institution that provided the program. He further stated that following his parole hearing, no programming recommendations were added to his file. In March 2021, OPB denied appellant's second request for reconsideration, again via form letter.

{¶ 6} Following the second denial, appellant wrote to OPB Chairperson Alicia Handwerk on March 25, 2021 questioning why OPB had failed to review his mental health records as required by Ohio Adm.Code 5120:1-1-07(B). Appellant also questioned Handwerk about OPB using his failure to complete the PROVE program as a determining factor in denying him release on parole when that program was not available at MCI. Appellant sought an explanation from Handwerk as to what constituted "relevant programming" for purposes of parole release consideration. (Mot. for Partial Summ. Jgmt., Ex. A, Aff. at ¶ 26-27.)

{¶ 7} In a letter to appellant dated May 25, 2021, Handwerk stated that his mental health history was addressed during the hearing; she particularly noted a discussion about appellant's prior participation in mental health services and his assertion that he was doing "great" and had no need to return to the mental health caseload. (Compl., Ex. 4.) Handwerk's letter also addressed appellant's "[r]elevant programming" question, defining that term as "programming which addresses one's specific risk and needs. In your case, the violence of the offense against a significant other, whether current or former, warrants

participation in additional programming to address[] that particular behavior, in this case a batterer's intervention program such as PROVE." Handwerk further stated, "[w]hile PROVE may not be available at MCI, it is, or will be available at other prisons in Ohio. Is understanding what led you to that behavior significant enough for you to be willing to request transfer to a prison which provides that programming when the ability to transfer for programming purposes is available again[?]" (Compl., Ex. 4.) Handwerk suggested that appellant kite Reentry Services to determine which prisons offer the PROVE program.

{¶ 8} Thereafter, on December 14, 2021, appellant filed a four-count complaint against appellees seeking declaratory judgment, pursuant to R.C. 2721.03, that he was denied meaningful consideration for parole in four specific ways. In Count 1, appellant alleged that OPB failed to consider his mental health records or request a Pre-Parole Mental Health Treatment Summary or Pre-Parole Risk Assessment. In Count 2, appellant alleged that OPB relied on inaccurate programming information; specifically, that OPB mistakenly believed that the PROVE program was available to him at MCI and mistakenly found that he had taken only "some relevant programming." (Compl. at ¶ 63.) In Count 3, appellant alleged that OPB failed to inform him prior to his parole hearing that he would not be considered suitable for parole unless he had participated in the PROVE program or other similar programming. In Count 4, appellant alleged that OPB failed to provide him access to documentation considered by OPB in its parole determination. Appellant's prayer for relief sought declaratory judgment on all four counts, along with injunctive relief pursuant to R.C. 2721.09 requiring OPB to grant him a new parole hearing and disclose all relevant documentation.

{¶ 9} In response to the complaint, appellees filed a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. The trial court issued a decision and order denying appellees' motion to dismiss as to Counts 1, 2, and 3 and granting appellees' motion as to Count 4.

{¶ 10} In December 2022, appellant moved for partial summary judgment on Counts 1 and 2 of his complaint. Appellant argued he was entitled to judgment as a matter of law on these counts because OPB failed to provide meaningful consideration regarding his mental health history and institutional programming history as required by Ohio

Adm.Code 5120:1-1-07 and that such failures violated his due process rights as delineated in *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270.

{¶ 11} Regarding his mental health history, appellant maintained that Ohio Adm.Code 5120:1-1-07(B)(5) and (16) required OPB to consider any reports of his mental health examinations and to consider his mental health as it reflects upon his ability to perform his plan of release. In his attached affidavit, appellant averred that he received mental health treatment for the first five years of his incarceration. He was removed from the mental health caseload in 2004 following assessment by mental health staff that he had met his treatment goals and no longer needed mental health services. Appellant averred that OPB was unaware of his prior mental health treatment, had never received or reviewed his mental health records, and was unaware that he had successfully addressed his mental health issues.

{¶ 12} As to his institutional programming history, appellant maintained that Ohio Adm.Code 5120:1-1-07(B)(1) required OPB to consider reports of his institutional programming in making its release determination. Citing his own affidavit testimony, appellant averred that ODRC staff conducted a Reentry Accountability Plan risk assessment ("RAP") when he entered ODRC custody in 1999. The RAP assessment showed a static risk score to re-offend of zero, and all categories in his dynamic needs assessment were assigned "no need for improvement," except for "Personal/Emotional Orientation" for which "some need was assessed." (Mot. for Partial Summ. Jgmt. at 5.) Appellant further stated he addressed the need assessment for "Personal/Emotional Orientation" by completing the Victim Awareness program in June 2015. (Mot. for Partial Summ. Jgmt. at 5.) Appellant also averred that an ORAS evaluation was conducted by his case manager in 2016, pursuant to which he was assessed "Low Risk/Low Need." (Mot. for Partial Summ. Jgmt. at 5.) As a result of this assessment, no case plan was completed, and no programming was recommended for or required of him. Appellant maintained that at the time of his parole hearing, he had completed all programming recommended by ODRC and no one from OPB had informed him that he would need to participate in the PROVE program to be considered suitable for parole. Appellant argued that the averment in OPB's decision that he had taken only "*some* relevant programming," along with Handwerk's recommendation that he participate in the PROVE program, demonstrated that "it is clear that [OPB] did not

consider the reports available to them regarding [his] institutional programming—that is his ORAS and RAP." (Emphasis sic.) (Mot. for Partial Summ. Jgmt. at 8-9.)

{¶ 13} Appellees filed a memorandum contra appellant's motion for partial summary judgment, arguing appellant was not entitled to summary judgment on Counts 1 and 2 of his complaint because material facts were in dispute regarding: (1) whether OPB reviewed reports regarding appellant's mental health, (2) whether OPB considered appellant's success in overcoming his mental health issues, (3) whether OPB refused appellant release on parole because he had not completed the PROVE program, and (4) whether OPB reviewed all of appellant's institutional programming in considering his release. In support, appellees relied on the affidavit testimony of Scott Widmer, an OPB member who was present at appellant's parole hearing. In his affidavit, Widmer attested that in reviewing and considering appellant's suitability for release on parole, he and other OPB members reviewed information and reports pertaining to, inter alia, the factors set forth in Ohio Adm.Code 5120:1-1-07(B)(1), (5), and (16) relating to appellant's mental health and his institutional programming. As to appellant's mental health, Widmer testified that appellant's mental health records and history were available to, and reviewed by, him and other OPB members. Widmer further attested that at the hearing, OPB and appellant discussed his mental health; during this discussion, appellant revealed his past participation in mental health services at MCI and asserted he was no longer in need of such services. Regarding appellant's institutional programming, Widmer testified that records related to his institutional programming history were available to, and reviewed by, him and other OPB members. Widmer further attested that appellant was not required to participate in the PROVE program as a prerequisite for release on parole.

{¶ 14} In addition to its memorandum contra, appellees filed a cross-motion for summary judgment on all undismissed counts. Regarding Counts 1 and 2, appellees argued that appellant's contention that OPB did not provide meaningful consideration for release on parole was not based on a claim that OPB relied on substantively incorrect information, but, rather, was based only on OPB's alleged failure to review and/or consider the factors set forth in Ohio Adm.Code 5120:1-1-07(B)(1), (5), and (16) pertaining to appellant's mental health and institutional programming. Appellees argued that even when viewed in a light most favorable to appellant, no substantive evidence in the record supported appellant's

assertion. Appellees further argued that no evidence supported appellant's allegation in Count 3 that he was denied meaningful consideration for parole because OPB failed to inform him that he was required to participate in the PROVE program. Appellees maintained appellant misconstrued Handwerk's suggestion that he enroll in the PROVE program as a requirement for parole consideration and that Widmer's affidavit confirmed that participation in the PROVE program was not a prerequisite to appellant being parole eligible.

{¶ 15} Appellant filed a combined memorandum contra appellees' cross-motion for summary judgment and reply to appellees' memorandum contra appellant's motion for partial summary judgment. As to Count 1, appellant argued that the averments in Widmer's affidavit that OPB members reviewed appellant's mental health file directly contradicted appellees' responses to appellant's requests for admission; as such, Widmer's subsequently filed affidavit could not be used to defeat his motion for partial summary judgment on this count. Appellant specifically referenced the following responses appellees provided to appellant's requests for admission:

> 1. Admit that no Parole Board member who participated in Plaintiff's June 25, 2019 institutional parole hearing was aware prior to the hearing that Plaintiff had been on the mental health docket.
>
> RESPONSE: Admit as Plaintiff had not been on the mental health caseload since 2004.
>
> 2. Admit that no Parole Board member reviewed Plaintiff's mental health file prior to his June 25, 2019 institutional parole hearing.
>
> RESPONSE: Admit. Plaintiff did not have a recent mental health file that would have prompted the Board to explore his mental health file further.
>
> 3. Admit that no Parole Board member reviewed Plaintiff's mental health file during his June 25, 2019 institutional parole hearing.
>
> RESPONSE: Admit as Plaintiff did not have a recent mental health file that would have prompted further investigation.

(Emphasis omitted.) (Memo & Reply at 2-3.)

{¶ 16} As to appellees' response to the first request for admission, appellant noted he did not ask for an admission regarding OPB's awareness of his mental health during the hearing because he himself raised his past participation in mental health services at the hearing. Appellant maintained that Widmer's affidavit supported this fact, given Widmer's attestation that appellant "*revealed*" during the hearing that he had participated in mental health services during his incarceration. (Emphasis sic.) (Memo & Reply at 3.) Appellant asserted there would have been nothing for him to "reveal" to OPB had it reviewed his mental health file prior to the hearing. Regarding appellees' responses to the second and third requests for admission, appellant argued appellees admitted that OPB had not reviewed appellant's mental health file either before or during appellant's hearing and that appellees' attempt to excuse its failure by stating there was no reason to review the file because appellant did not have a "recent" mental health file was unavailing. (Memo & Reply at 3-4.) Appellant maintained that because appellees produced no evidence beyond Widmer's affidavit in response to his motion for partial summary judgment as to Count 1, he was entitled to summary judgment on that count.

{¶ 17} Appellant further argued that even if Widmer's affidavit could be viewed as being consistent with appellees' prior admissions, thereby precluding him from obtaining summary judgment on Count 1, appellees would not be entitled to summary judgment because there would be a genuine issue of material fact regarding OPB's review of his mental health file. Appellant argued that the following three events provided circumstantial evidence that OPB had not reviewed his mental health file prior to the hearing: (1) his revelation during the hearing that he had been on the mental health caseload, (2) OPB's failure to respond to his question posed during the hearing as to whether it had reviewed his mental health file prior to the hearing, and (3) OPB's failure to obtain from him a release authorizing it to review his mental health records.

{¶ 18} As to Count 2, appellant argued that OPB made a substantive error in concluding that he was not suitable for release on parole, in part, because he had taken only "*some* relevant programming." (Emphasis sic.) (Memo & Reply at 7.) Citing appellees' admission that appellant had completed all programming recommended by ODRC prior to the hearing, appellant argued that appellees either misread or misconstrued his programming records. Appellant also argued there was conflicting evidence, thus

precluding summary judgment, as to whether OPB considered appellant's failure to participate in the PROVE program in deciding to continue his parole hearing. In support of this argument, appellant cited Widmer's affidavit testimony that appellant's failure to participate in the PROVE program was not a consideration in appellant's parole eligibility and the testimony he provided in his second affidavit that an OPB member asked him in a "critical tone" about his failure to participate in the PROVE program, that he informed OPB PROVE had never been offered at MCI during his incarceration, that another OPB member responded the PROVE program was listed on MCI's website and asked appellant why he had not participated in the program, that he reiterated the PROVE program was not offered at MCI, and, even if it were offered, no MCI staff member had placed a recommendation in his file to take it. (Memo & Reply at 8-9.)

{¶ 19} Regarding Count 3, appellant argued that a genuine issue of material fact existed, thus precluding summary judgment, as to whether appellees were obligated to inform appellant he was required to complete the PROVE program in order to be considered suitable for release on parole. Appellant maintained that the disposition of Count 3 hinged on the disposition of Count 2, i.e., if the trier of fact concluded that OPB denied appellant release on parole based on its mistaken belief that the PROVE program was available at MCI and that appellant failed to participate in the program, "then as a logical consequence [the trier of fact] would have to find that [OPB] viewed the PROVE program * * * as a prerequisite to [appellant] being considered suitable for release." (Memo & Reply at 10.)

{¶ 20} Appellees filed a reply to appellant's memorandum contra, arguing as to Count 1 that Widmer's affidavit testimony stating that OPB reviewed and considered appellant's mental health records did not contradict appellees' responses to appellant's requests for admissions. Appellees also argued that OPB's non-response to the question appellant posed at the parole hearing as to whether OPB reviewed his mental health file did not demonstrate that OPB did not review it. Appellees further maintained that nothing in the record established that appellant's mental health posed a concern to OPB as to his suitability for release on parole. As to Count 2, appellees argued that appellant's assertion that OPB "misread or misconstrued" his programming records was not the same as claiming the programming records provided to OPB were "inaccurate." (Reply at 4.) In

addition, appellees noted appellant had already raised any potential inaccuracies in his programming history, particularly with regard to the availability of the PROVE program, his failure to participate in that program, and whether OPB denied him release on parole based on his lack of participation, through his two motions for reconsideration, both of which were rejected by OPB. Regarding Count 3, appellees maintained appellant cited no authority to support his claim that OPB had a duty to inform appellant that he was required to participate in the PROVE program as a prerequisite to consideration for release on parole.

{¶ 21} On October 12, 2023, the trial court issued a decision and order granting appellees' motion for summary judgment and denying appellant's motion for partial summary judgment, concluding appellant received meaningful consideration for release on parole. As to appellant's institutional programming history, the court rejected appellant's contention that OPB would have made a different decision had it had the correct information about the availability of the PROVE program. The court stated that in his requests for reconsideration, appellant provided OPB with all the information he sought to have considered, including that the PROVE program was not offered at MCI, and that after reviewing that information, OPB rejected appellant's requests for reconsideration. The court further averred that OPB's decision was not based solely on his participation (or, in this case, lack of participation) in the PROVE program, but was based on the seriousness of appellant's crime and the lack of insight into his offense. Additionally, the court rejected appellant's assertion that OPB was required to apprise him prior to the hearing that he would not be considered suitable for parole unless he had participated in the PROVE program or other similar programming. The court reasoned that requiring OPB to provide him a list of relevant programming would exceed OPB's "duty to review" and "would set a dangerous precedent." (Oct. 12, 2023 Decision & Entry at 10-12.)

{¶ 22} The trial court further determined that appellant was provided meaningful consideration for parole despite OPB's admission that it did not obtain appellant's updated mental health records. The court noted that during the parole hearing OPB inquired about appellant's mental health history; he responded that he was removed from the mental health caseload in 2004 and had no need to be placed back on the caseload. The court further found that OPB's reference to appellant having taken "some relevant programming"

established that OPB "met [its] duty to obtain all necessary records to consider [appellant] for parole." (Decision & Order at 12-13.) The court determined that "even if [OPB] did not have the mental [health] records physically with them at the hearing, [it] still took his mental health history in[to] consideration during the hearing. [Appellant's] mental [health] state was not overlooked, it was just not given as much weight when making the decision than the other factors considering release." (Decision & Order at 13.)

## II. Assignments of Error

{¶ 23} In a timely appeal, appellant sets forth the following three assignments of error for our review:

> [I.] The trial court erred in granting summary judgment to Appellees and denying it to Appellant on Count Two of Appellant's Complaint because the undisputed material facts demonstrate that the Parole Board denied Appellant meaningful consideration for parole in concluding that he had taken only "some" relevant programming and in relying on inaccurate institutional programming information.
>
> [II.] The trial court erred in granting summary judgment to Appellees on Count Three of Appellant's Complaint because there is a genuine issue of material fact that precludes the entry of summary judgment in either party's favor.
>
> [III.] The trial court erred in granting summary judgment to Appellees and denying it to Appellant on Count One of Appellant's Complaint because the undisputed material facts demonstrate that the Parole Board denied Appellant meaningful consideration for parole by failing to consider reports of Appellant's mental health, as required by Ohio Admin.Code § 5120:1-1-07(B)(5).

## III. Discussion

{¶ 24} Appellant's assignments of error challenge the trial court's denial of his motion for partial summary judgment and grant of appellees' cross-motion for summary judgment on Counts 1, 2, and 3 of his complaint.[1] As such, we first set forth the standard of review applicable to summary judgment dispositions.

---

[1] Appellant asserts in his merit brief that he does not appeal the trial court's decision dismissing Count 4 of his complaint. (Appellant's Brief at 3.)

**{¶ 25}** This court reviews summary judgment dispositions under a de novo standard of review. *LRC Realty, Inc. v. B.E.B. Props.*, 160 Ohio St.3d 218, 2020-Ohio-3196, ¶ 11. De novo appellate review means the court of appeals conducts an independent review, without deference to the trial court's decision. *Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 12. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material facts exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a summary judgment motion, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

**{¶ 26}** Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot satisfy the initial burden by simply making conclusory allegations, but instead must demonstrate, including by use of affidavit or other evidence allowed by Civ.R. 56(C), that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wiltshire Capital* at ¶ 13. If the moving party satisfies the initial burden, the non-moving party has a burden to respond, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Dresher* at 293; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991). "Requiring that the moving party provide specific reasons and evidence gives rise to a reciprocal burden of specificity for the non-moving party." *Mitself v. Wheeler*, 38 Ohio St.3d 112, 115 (1988). "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd., of Texas*, 59 Ohio St.3d 108, 111 (1991), citing *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

**{¶ 27}** At the outset, we consider the procedural posture of this case. The central premise of appellant's action against appellees is that he did not receive meaningful consideration for parole. Typically, an inmate challenging a denial of parole on grounds that he or she did not receive meaningful consideration for parole initiates a mandamus action because a writ must issue for there to be complete relief, i.e., an order directing OPB to conduct a new hearing. *Charley v. Ohio Adult Parole Auth.*, 10th Dist. No. 22AP-678, 2023-Ohio-4294, ¶ 11, citing *Keith*. Such an order is a mandatory injunction. *Id.* A mandatory injunction is an extraordinary remedy compelling the defendant to restore a party's rights through an affirmative action. *Id.* Here, appellant initiated this action via a complaint seeking a declaratory judgment that he did not receive meaningful consideration for parole and requesting injunctive relief requiring OPB to grant him a new hearing; thus, appellant is requesting a mandatory injunction. "A mandatory injunction is not an available remedy in a declaratory judgment action filed under R.C. Chapter 2721." *Id.*, citing *State ex rel. Kerns v. Simmers*, 153 Ohio St.3d 103, 2018-Ohio-256. However, because we find the trial court did not err in concluding that appellant failed to demonstrate he was denied meaningful consideration for parole, the matter of remedy is ultimately moot. *Id.* at ¶ 12.

**{¶ 28}** We now turn to the merits of the appeal. It is well-established that an inmate has no constitutional or statutory right to release on parole prior to the expiration of his or her sentence. *State ex rel. Dodson v. Phipps*, ___ Ohio St.3d ___, 2024-Ohio-4928, ¶ 19, citing *State ex rel. Bailey v. Ohio Parole Bd.*, 152 Ohio St.3d 426, 2017-Ohio-9202, ¶ 9, citing *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), and *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490 (1994); *Keith* at ¶ 19, citing *State ex rel. Henderson v. Ohio Dept. of Rehab. & Corr.*, 81 Ohio St.3d 267, 268 (1998). Because there is no constitutional or statutory right to be released on parole, the denial of parole does not deprive an inmate of liberty so long as the state makes the parole decision discretionary. *Keith* at ¶ 19. In Ohio, OPB has " 'wide-ranging discretion in parole matters.' " *Bailey* at ¶ 9, quoting *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 2002-Ohio-6719, ¶ 28. R.C. 2967.03 vests discretion in the parole board to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice and be

consistent with the welfare and security of society." Thus, because parole decisions are discretionary, the denial of parole does not constitute a deprivation of liberty or denial of due process. *Phelps v. Ohio Parole Bd.*, 10th Dist. No. 22AP-175, 2023-Ohio-284, ¶ 13, citing R.C. 2967.03; *Keith* at ¶ 19, citing *State ex rel. Hattie v. Goldhardt*, 69 Ohio St.3d 123, 126 (1994). However, OPB's discretion in denying parole is not unlimited. *Bailey* at ¶ 10. "[T]here is an 'inherent expectation "that a criminal offender will receive meaningful consideration for parole." ' " *Dodson* at ¶ 19, quoting *Bailey* at ¶ 10, quoting *Layne* at ¶ 27, citing former R.C. 2967.13(A).

{¶ 29} Ohio Adm.Code 5120:1-1-07 governs the procedure for determining whether to release an inmate on parole.[2] Ohio Adm.Code 5120:1-1-07(A) sets forth various factors OPB must consider when determining whether an inmate should be released on parole. The provision provides that OPB may decide not to release an inmate when: (1) there is substantial reason to believe that the inmate will engage in further criminal conduct, (2) there is substantial reason to believe that, due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety or that, due to the serious nature of the crime, the release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society, (3) there is substantial reason to believe that the release of the inmate would not act as a deterrent to the inmate or to other institutionalized inmates from violating institutional rules and regulations, or (4) there is need for additional information on which to make a release decision. *Nelson v. Mohr*, 10th Dist. No. 13AP-130, 2013-Ohio-4506, ¶ 13; *Swihart v. Chairman/Chairperson of the Ohio Adult Parole Auth.*, 10th Dist. No. 13AP-993, 2014-Ohio-3305, ¶ 18. Ohio Adm.Code 5120:1-1-07(B)(1) through (18) provides 17 specific factors, plus an "any other factors" catch-all factor, that OPB must consider when contemplating the release of an inmate. *Nelson* at ¶ 13; *Swihart* at ¶ 18. Ohio Adm.Code 5120:1-1-07(C) provides that "[t]he consideration of any single factor, or any group of factors, shall not create a presumption of release on parole, or the presumption of continued incarceration. The parole decision need not expressly address any of the foregoing factors." *See Swihart* at ¶ 18.

---

[2] Ohio Adm.Code 5120:1-1-07 was amended effective July 29, 2021. For purposes of this appeal, we apply the version in effect at the time of appellant's June 2019 parole hearing.

{¶ 30} "[H]aving established a parole system, and having put in place statutory and regulatory language requiring [OPB] to consider relevant information regarding a prisoner it is considering for parole, the state has created a minimal due-process expectation that the information will actually and accurately pertain to the prisoner whose parole is being considered." *Keith* at ¶ 32. " '[I]n any parole determination involving indeterminate sentencing, the [OPB] may not rely on information that it knows or has reason to know is inaccurate." *State ex rel. Brust v. Chambers-Smith, Dir.*, 156 Ohio St.3d 331, 2019-Ohio-857, ¶ 8, quoting *Keith* at ¶ 26. Therefore, " 'where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, [OPB] has an obligation to investigate and correct any significant errors in the record of the prisoner.' " *Id.*, quoting *Keith* at ¶ 28. A "substantive error" in a parole record precludes meaningful consideration of an inmate's release. *Id.*, citing *Keith* at ¶ 30. In this context, " 'substantive error' is synonymous with 'substantial error.' " *State ex rel. Cobb v. Adult Parole Auth.*, 155 Ohio St.3d 527, 2018-Ohio-4745, ¶ 8, quoting *Black's Law Dictionary* 660 (10th Ed.2014). "It is '[a]n error that affects a party's substantive rights or the outcome of the case' and, as a consequence, 'may require reversal on appeal.' " *Id.*, quoting *Black's*. "Thus, the operative inquiry is 'whether there is a reasonable possibility that *but for the alleged error*, [OPB] would have reached a different decision.' " (Emphasis sic.) *State ex rel. Edwards v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-195, 2020-Ohio-2799, ¶ 15, quoting *Cobb* at ¶ 9.

{¶ 31} Appellant contends he did not receive meaningful consideration for parole because OPB did not review and consider available reports pertaining to his institutional programming history or his mental health history in contravention of Ohio Adm.Code 5120:1-1-07(B)(1), (5), and (16). However, OPB denied parole because despite the programming he did take, appellant "exhibits limited insight into offense behavior" and ultimately because "[t]he aggravating factors in this case lead the Board to conclude that release would demean the seriousness of the offense and not further the interest of justice." (Compl. at ¶ 39, Ex. 3.) Applying the operative inquiry noted above, we cannot find there is a reasonable possibility OPB would have reached a different decision even if OPB reviewed and considered available reports pertaining to programming history and his mental health history as appellant suggests OPB should have done but did not. OPB's

reason for denial of parole was because of the aggravating factors of the crime he committed, not because his institutional programming or mental health history were somehow lacking. Therefore, the "but for the alleged error" test has not been met and error by OPB as appellant suggests, if any, was not substantive.

{¶ 32} Having found that error, if any, by OPB as appellant suggests was not substantive, it is not necessary for us to consider appellant's specific arguments regarding his institutional programming or his mental health history. Nevertheless, we will consider appellant's arguments.

{¶ 33} Pursuant to Ohio Adm.Code 5120:1-1-07(B)(1), OPB must consider "[a]ny reports prepared by an institutional staff member relating to the inmate's personality, social history, and adjustment to institutional programs and assignments." Under Ohio Adm.Code 5120:1-1-07(B)(5) and (16), OPB must consider, respectively, "[a]ny reports of physical, mental or psychiatric examination of the inmate," and "[t]he physical and mental health of the inmate as they reflect upon the inmate's ability to perform his plan of release."

{¶ 34} Appellant contends that OPB's failure to review and consider the reports constitutes structural error requiring remand for a new hearing.[3] Appellant does not direct us to any legal authority applying structural error in the context of a parole determination, and our independent research has yielded no case law to that effect. Appellant relies on the court's assertion in *Keith* that "[i]nherent in the language of Ohio Adm.Code 5120:1-1-07(B) is that [OPB] must consider various reports and 'other relevant information' pertaining to the inmate whose parole is being considered." *Id.* at ¶ 23. Appellant maintains that the court's failure to employ a prejudicial, "but for" analysis related to the Ohio Adm.Code factors means that any failure by the OPB to review the factors necessarily constitutes structural error requiring a new hearing, without regard to whether OPB would have reached the same conclusion had it conducted the review. We do not read *Keith* that broadly. Furthermore, appellant's argument does not account for the court's assertion in its subsequent *Cobb* decision that the operative inquiry is "whether there is a reasonable possibility that but for the alleged error, [OPB] would have reached a different decision."

---

[3] Appellant does not employ the term "structural error" in his briefing. However, upon questioning by the panel at oral argument, appellant asserted that OPB's failure to review and consider his programming and mental health reports amounts to structural error.

*Cobb* at ¶ 9. Additionally, in rendering its decision, OPB expressly stated it considered all mandatory factors under Ohio Adm.Code 5120:1-1-07. *See Dodson* at ¶ 30.

{¶ 35} Having declined to adopt appellant's structural error argument, we now address appellant's specific contentions. Regarding his programming history, appellant contends that OPB's assertion in its decision that he completed only "some relevant programming" was inaccurate, thus constituting substantive error, because he had completed all programming recommended to him by ODRC. Specifically, appellant argues he completed the programming recommended by ODRC related to his RAP risk assessment and that ODRC did not recommend or require any programming related to his ORAS evaluation. Appellant also contends that OPB's reference to his completion of only "some relevant programming" demonstrates that OPB required his participation in the PROVE program to be considered suitable for parole and based its denial of parole on his failure to participate in that program.

{¶ 36} OPB's statement that appellant completed "some relevant programming" is not inaccurate and thus does not constitute substantive error. Appellant acknowledges he completed programming related to his RAP risk assessment. Moreover, OPB did not state that appellant completed *only* some relevant programming. Appellant attaches the term *only* to the phrase "some relevant programming" in a purported effort to bolster his argument.

{¶ 37} Further, appellant's assertion that ODRC did not recommend or require programming following his ORAS assessment implies that OPB erroneously failed to review the ORAS information sheet and its assessment of appellant as low risk/low need. In *State ex rel. Semenchuk v. Ohio Adult Parole Auth.*, 10th Dist. No. 19AP-361, 2019-Ohio-4641, this court addressed the inmate's assertion that there was a discrepancy between OPB's statement that he lacked relevant programming to help manage his risk to society and his ORAS information that he was low risk/low need. *Id*. at ¶ 19. The inmate argued that OPB erred in not using, and therefore ignoring, the ORAS information sheet. *Id*. The inmate reasoned that the ORAS information sheet was conclusive evidence regarding his rehabilitative needs, and OPB's statement contrary to that evidence demonstrated an inaccuracy requiring a new hearing. *Id*. We noted ODRC's selection of ORAS as the risk assessment tool to assist entities such as sentencing courts, probation departments, and

OPB in assessing an adult offender's risk of reoffending and determining their rehabilitative needs. *Id.* at ¶ 20. *See also Dodson* at ¶ 22 ("Under R.C. 5120.114(A) and [Ohio] Adm.Code 5120-13-01, [ODRC] has selected ORAS as the 'single validated risk assessment tool' to use when assessing every adult offender's 'risk of reoffending' and 'rehabilitative needs.' "). In *Semenchuk*, we stated that "[d]espite ORAS having been designated as the 'single validated risk assessment tool for adult offenders,' it 'is a work in progress,' and this designation does not eliminate the discretion of an entity such as a court or [OPB] evaluating the rehabilitative needs of an offender." *Id.* at ¶ 20, quoting *State v. Jennings*, 2d Dist. No. 2013 CA 60, 2014-Ohio-2307, ¶ 25, 28. We concluded that "while [OPB] must consider available ORAS information in its evaluation of whether to parole an inmate, it retains discretion to evaluate that information in relation to all of the other information before it. The fact that [OPB] made a finding that appears to be inconsistent with submitted ORAS information does not mean Semenchuk's parole record contained a substantial inaccuracy." *Id.* at ¶ 21. *See also Dodson* at ¶ 24 ("[OPB] has discretion at a parole hearing to consider other information in addition to an offender's ORAS score.").

{¶ 38} Here, we cannot conclude from OPB's assertion that appellant completed "some relevant programming" that it did not review his ORAS information sheet finding him low risk/low need or that it failed to consider that ODRC did not recommend programming following the ORAS assessment. Further, pursuant to *Semenchuk*, OPB retains discretion to evaluate the results of appellant's ORAS assessment and/or the absence of programming recommendation stemming from that assessment in relation to all the information before it.

{¶ 39} We also find no merit to appellant's contention that OPB's reference to his completion of "some relevant programming" demonstrates that OPB required his participation in the PROVE program to be considered suitable for parole. OPB's decision does not mention the PROVE program, nor does it suggest that appellant was required to participate in that program to be considered suitable for parole. Moreover, neither appellant's affidavit testimony regarding the OPB member's alleged criticism of his failure to participate in the program nor Handwerk's May 25, 2021 letter recommending that he participate establish that OPB denied appellant parole because he did not participate in the PROVE program.

{¶ 40} As to OPB's alleged failure to review reports pertaining to his mental health history, appellant's complaint and his own affidavit testimony demonstrate that issues relating to his mental health were discussed at the parole hearing. Indeed, in his complaint, appellant asserted that in response to OPB questioning about his mental health, he averred he was on the mental health caseload for the first five years of his incarceration but was removed from the caseload in 2004 following assessment by mental health staff that he had met his treatment goals and no longer needed mental health services. Further, in the testimony presented in his second affidavit, appellant acknowledged a discussion regarding his mental health history at his parole hearing. Thus, even if OPB did not review the reports related to appellant's mental health prior to or during the parole hearing, OPB was made aware of appellant's mental health history at the parole hearing, and nothing in OPB's decision suggests that appellant's mental health presented a barrier to his suitability for release on parole.

{¶ 41} Additionally, appellant raised his arguments regarding potential inaccuracies in his programming history, including those related to the PROVE program, and his mental health history, including OPB's alleged failure to consider his mental health reports, through his requests for reconsideration. *See Brust* at ¶ 21 ("Under current [O]DRC policy, each inmate is permitted to respond to the factual information discussed at the [parole] hearing and to submit verbally or in writing any additional information that is pertinent."). OPB, aware of appellant's arguments, nonetheless continued to deny parole.

{¶ 42} Finally, Ohio Adm.Code 5120:1-1-07(A)(2) expressly provides that OPB may rely on the serious nature of the offense to determine whether release of the inmate into society would create undue risk to public safety or whether release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society. As noted earlier, R.C. 2967.03 vests discretion in OPB to grant parole if it determines there is reasonable ground to believe that paroling an inmate would further the interests of justice and be consistent with the welfare and security of society. " 'R.C. 2967.03 has been construed as "allow[ing] [OPB] to consider any evidence it feels is pertinent to the question of whether the prisoner is fit to be at liberty without harming others." ' " *Swihart* at ¶ 23, quoting *Nelson* at ¶ 18, quoting *State ex rel. Thompson v. Clark*, 7 Ohio App.3d 191, 192 (10th Dist.1982). Here, OPB, in a reasonable exercise of discretion, ultimately determined

the serious nature of appellant's crime would create a risk to public safety, would not further the interests of justice, and/or would not be consistent with the welfare and security of society. Indeed, OPB expressly averred that appellant's case was "aggravated by the extreme violence exhibited in the stabbing death to the mother of his child" and that he "exhibits limited insight into offense behavior" despite having participated in relevant programming while incarcerated for his crime. (Decision & Order at 2.) Pursuant to Ohio Adm.Code 5120:1-1-07(C), OPB was not required to find appellant suitable for release on parole based on any of the other factors set forth in Ohio Adm.Code 5120:1-1-07. OPB retains discretion to weigh the serious nature of appellant's crime against all the other information before it.

{¶ 43} For the foregoing reasons, we conclude, as did the trial court, that appellant received meaningful consideration for parole. Thus, the trial court did not err in granting appellees' motion for summary judgment and denying appellant's motion for partial summary judgment. Accordingly, we overrule appellant's three assignments of error.

## IV. Conclusion

{¶ 44} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

EDELSTEIN and LELAND, JJ., concur.

—————————